(No. 33901.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER EDWARD KENZIK, Plaintiff in Error.

*Opinion filed September 25, 1956.*

WARREN J. CAREY, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

\* Mr. JUSTICE MAXWELL delivered the opinion of the court:

Peter Edward Kenzik has filed his writ of error to review a verdict and judgment finding him guilty of the crime of murder and fixing his punishment at death. Kenzik, hereinafter called defendant, at the time of trial was a person 48 years of age and was arraigned as an indigent person with court-appointed counsel March 4, 1955. On March 14, 1955, counsel withdrew their appearance and

---

\* This opinion was prepared by the late Mr. Justice Maxwell and has been adopted and filed as the opinion of the court.

the Public Defender of Cook County was appointed to represent the defendant. On April 4, 1955, the Public Defender was given leave to withdraw and another attorney was appointed by the court to represent the defendant. The case was set for trial on May 2, 1955, at which time the defendant moved for a change of venue. The change of venue was granted and the case then transferred for trial before another judge. Defendant's counsel then filed a motion for continuance supported by affidavit, setting forth that since the day of appointment as counsel for defendant, his attorney had been actively engaged in the trial of many cases which consumed more than 19 days of actual trial, not taking into account preparation time. This attorney informed the court that he had conversed with the defendant only three times since his appointment and then for only 15 to 20 minutes on each occasion, that he had not yet been able to properly investigate the facts, consult with witnesses, adequately consult with defendant or make necessary office and library preparations. The attorney further informed the court that it was necessary to have a short continuance in order to have the required time to personally find witnesses. If not granted this continuance defendant's attorney informed the court that he was wholly unprepared for trial. The court then turned to the State's Attorney for further advice in the matter and was informed by the State's Attorney's assistant in charge of the trial that the defendant had been arraigned February 28, 1955, (at which time defendant had no attorney,) that two months had passed, that an elderly witness had been brought to Chicago for the second time from the State of Mississippi with the understanding that the case would proceed to trial on that date. It was the prosecuting attorney's opinion that the State would be prejudiced by a continuance in view of the fact that they could not guarantee production of the witness at a later time. The court interrogated the prosecution witness, who stated she was 77 years

of age, that she was under a doctor's care, that she was getting sick and could not stand it much longer.

The court then discussed the matter with defendant's attorney and learned from him that he had been in the case for less than 30 days, that he had spoken to the defendant briefly on but a few occasions, that defendant had given him some written material consisting of nearly 200 pages which he had just finished reading over the week-end prior to the trial date. The court then indicated that the case should be called for trial and defendant's motion for continuance be denied. It was then during the noon hour and the court recessed until 2:00 o'clock, meanwhile advising defendant's attorney that if he had any trouble securing witnesses he should prepare subpoenas and the court would direct the sheriff to serve them as rapidly as possible and that if, during the course of the trial, any of the witnesses subpoenaed by the defendant did not appear the court would issue a *capias* for their production. It was then that defendant's attorney interrogated the defendant for the record disclosing thereby that said witnesses, whose attendance defendant desired, were employed in the city of Chicago, that defendant knew where they were employed but did not know their home addresses and further that other witnesses resided outside the State of Illinois. The court then stated that permission would be granted defendant's attorney to sit down with defendant in the bailiff's room in order that he might "get these witnesses straightened" before picking a jury. The court announced the trial would resume at 2:00 o'clock in the afternoon. At this time the defendant then informed the court that he felt that he was not guilty of the crime charged, that he had proof another man was involved in the case and was not prepared to go to trial that day and because of the circumstances felt that his attorney could not be of help to him and so preferred to be without counsel. The defendant stated that the State could have their own way

in prosecuting him and that he would have nothing to say to the jury or to the court. After making it clear to the court that he did not desire the assistance of counsel the trial was ordered to proceed. The indictment was read to the defendant and he persisted in his plea of not guilty. The court then granted defendant's counsel permission to withdraw from the case.

The jury was then impaneled and sworn for selection. During selection of the jury it appears that defendant did not interrogate any of the jurors and when informed by the court as to his rights concerning their selection stated that since he was without counsel he felt that he was "given a grave injustice" and would have nothing to say to the jurors. The court again asked defendant if he desired the court to appoint counsel and his reply was that if given sufficient time to prepare his case he would like to have an attorney appointed.

At the end of the day, when the State had selected and tendered two panels and had called the last panel of four jurors the court brought in the defendant out of the presence of the jury and informed him that he had a right to keep the jurors together during the entire trial. The court stated, "This means that the defendant has a right to keep them from going home each night. On the other hand, the defendant in person can waive that right. That means the jury can separate to go home each night. What do you wish done?" The defendant replied, "I wish that they would have the proper rest and go home each night." The court then informed defendant that he had waived his right to have the jury kept together during the trial and that they could separate and go home each night. Defendant was also informed by the court that his right to have the jury kept together was a right which he could waive.

On the following day the balance of the jurors were selected. When the defendant again asked for a continuance and assistance of counsel, the court, after inquiring

from the assistant State's Attorney as to his sentiments concerning a continuance, ordered the case to proceed. Thereupon a procession of prosecuting witnesses appeared and testified without any objections or cross-examination on the part of the defendant or the court.

It appears from the record that on March 13, 1953, Clara Erickson Miller died from wounds received on the same day. The defendant, under the name of Peter Miller, was married to deceased since 1949. Their home was in Chicago and the mother of the deceased, Katie Erickson, lived with them. The married couple separated in February, 1953. Defendant on several occasions had returned to the apartment and on one of said occasions pointed a gun at his wife and threatened to shoot her. The evening of decedent's death, at approximately 6:00 o'clock, defendant visited the apartment and talked to Mrs. Erickson while waiting for his wife to return from work. After 15 or 20 minutes his wife returned and sat on the couch next to him. Her mother went to the kitchen for coffee and while there heard her daughter scream "Mama, come quick, Pete is killing me." The mother rushed into the room and saw defendant jabbing a butcher knife into his wife's breast and while the witness struggled with him she in turn received stab wounds. Defendant left without a word, the authorities were called, and mother and daughter were taken to the hospital where the daughter died.

Defendant could not be located until February 10, 1955, when the Chicago authorities took him into custody in San Diego, California. Defendant told a police lieutenant of Chicago that he had been in the apartment of his wife on the date of her death but remembered nothing that happened while there, as everything was a blank.

At the close of the State's case, the court again offered to appoint counsel for the defendant. Defendant's reply was that he would desire counsel, providing counsel had sufficient time to prepare. He indicated that 30 days was

sufficient time for preparation of his defense and his request was denied. On the following day after court was convened and in the presence of the jury the court informed defendant that it was his right to present evidence in his defense. Defendant replied that he had already made it clear to the court that he was not prepared to defend himself, that he had no attorney and felt that he would only be incriminating himself if he said anything. When asked by the court if he cared to take the stand at that time or not and that he had the right so to do, defendant stated he was not prepared and would not take the stand. In reply to the court's question as to whether he had other evidence to present in his behalf defendant informed that he hadn't had sufficient time for that. The court then inquired, "So that you are not now presenting any evidence on behalf of yourself as a defendant in this case, is that correct?" The defendant then replied, "That is correct." Thereafter the court announced, "Let the record show that the defendant not having presented any evidence on behalf of the defendant and having so informd the court, the court will consider the defendant has rested."

After argument by the prosecution the court informed the defendant that he had a right to address the jury in final argument and defendant again stated he had nothing to say, that he was not guilty of the crime, that if the jury found him guilty without counsel, he had nothing further to say. When asked for instructions to be tendered the jury, defendant informed the court that he was not familiar with court procedure and would not know what to say. The court then replied: "Then the Court takes it that you have no instructions to offer to the jury on your behalf at this time." The defendant replied he had nothing to say. Neither the State's Attorney nor the court gave any of the instructions which are usually given in felony cases on behalf of defendants.

The verdict rendered by the jury found the defendant

guilty and fixed his punishment at death. Upon its own motion, the court ordered that a motion for a new trial be entered and later appointed the same attorney who appeared with defendant at the opening of the trial, for the purpose of preparing a motion for a new trial or for any other proceedings. Upon a hearing of the motion for new trial witnesses were called and evidence was presented in support thereof. Testimony of three of the jurors was heard. The foreman testified that during the course of the trial and before the jury verdict he had read a newspaper article concerning the defendant, that other jurors had called the article to his attention. He stated that he informed them of the fact that unless presented in court nothing was to be considered as relevant. Although stating that his verdict was not influenced by the newspaper article, he did state that he and other jurors could not help having the newspaper article in mind at the time they deliberated. Another juror stated he read the article but was not influenced by it. A lady juror testified that she heard one of the other women say she had heard a news broadcast the evening prior to retirement of the jury for deliberation on its verdict. She also stated that another lady juror stated that someone had read the newspaper article in the morning paper.

The article in question related that a jury of seven women and five men was completed to try defendant accused of murdering his wife in a named judge's court. It further informed that the jury was qualified to impose the death penalty. The second paragraph stated that the defendant had a long criminal record and had fled after the slaying. It also stated that the Federal Bureau of Investigation had named defendant as one of its ten most wanted men and that defendant had been captured in California the past February.

Defendant assigns as error the trial court's refusal to grant him a continuance to make adequate preparation for

his defense; denial of the assistance of competent counsel; the trial court's reference to defendant's refusal to testify in his own behalf in the jury's presence; allowing the jury to separate during the trial, during which time they were influenced by prejudicial matters published by newspapers and radio and prejudicial argument of the assistant State's Attorney. The State denies each of these assignments.

None of the cases cited by both defendant and the State are directly in point with the case at bar in respect to the question of a defendant's right to a continuance in a criminal case on the ground of inadequate time for necessary preparation. As a general rule this is understandably within the province of the trial court's discretion. However, the cases uniformly hold that a defendant is entitled to a continuance for adequate preparation for his defense. *People* v. *Trimble*, 345 Ill. 82; *People* v. *Dunham*, 334 Ill. 516; *Sutton* v. *People*, 119 Ill. 250.

It is true that in the present case several elements are lacking in defendant's motion for continuance. It does not assert that defendant has a meritorious defense nor does it assert the facts expected to be proved by missing witnesses. However, in the particular case it is understandable that the appointed counsel was evidently actively engaged in other cases with prior commitments. There is a general tendency by the courts to exercise a greater leniency and wider discretion where it is necessary to protect the rights of indigent persons accused of crime through appointment of counsel not of their own choosing. This court has on other occasions indicated that whereas the incompetency of counsel appointed by a trial court could be availed of as error on review yet the same incompetence in another attorney of a defendant's own choosing under a retainer could not be availed of. (*People* v. *Pierce*, 387 Ill. 608.) The charge here being homicide a jury finding the defendant guilty has a wide latitude in fixing the defendant's penalty—from a minimum of 14 years imprison-

ment to death. This court must recognize the right of a guilty person in homicide cases to present to a jury or a court (if heard without a jury) the full facts and background surrounding the charge with reasonable opportunity to obtain such facts. It cannot be denied that appointed counsel, busy with prior commitments, must be afforded reasonable time to obtain all the facts from the defendant and other witnesses not only for the necessary preparation of a defense on the merits but also for a hearing of matters in mitigation of his sentence. It also follows he must be given reasonable time to assemble facts to properly prepare and present a motion for continuance where necessary. Although the prosecution has pointed out that, in the discourse before the trial court, it appeared that the alleged witnesses of the defendant would testify only as to his character, it does appear that defendant informed the court that a nonresident witness would testify as to conversations between the defendant and his wife one week prior to the occurrence. Defendant also told the court that he had proof that another man was involved in the case.

In view of our belief that there should be another trial so that the rights of all parties concerned can be vigilantly guarded we shall refer to only one other assignment. It is true that the trial court explained to the defendant his right concerning the separation of the jury during the trial of the cause and that defendant assented to their separation. However, under the circumstances in the particular case, we do not feel that the defendant knowingly and understandingly waived his right concerning the separation of the jury. These elements must be present to constitute an effective waiver. (*People* v. *Williams,* 399 Ill. 452; *People ex rel. Swanson* v. *Fisher,* 340 Ill. 250.) There are many trial courts which do not permit the separation of a jury in any felony case. The reason for this needs no explanation. (See *People* v. *Strause,* 290 Ill. 259.) It would be difficult to find competent counsel learned in

the trial of criminal causes who would advise a defendant, charged with homicide such as the present defendant with the same attending circumstances, to agree to the separation of a jury. The opportunity for interference by outside prejudicial matters is quite evident. It is most difficult for men trained in the law to exclude these prejudices—let alone a jury of laymen. That the same verdict might have followed had there been no prejudicial matters brought to the jury is of no consequence—such a conclusion is one only of conjecture at best.

The declarations of this court concerning this issue, as pronounced in *People* v. *Hryciuk*, 5 Ill.2d 176, at 181-185, require no further elucidation and are reaffirmed. The fundamental issue concerning defendant's receiving a fair trial must manifestly require our holding that the trial court's denial of the motion for new trial was in error and that this cause should be reversed and remanded for a new trial.

The judgment will therefore be reversed and the cause remanded for a new trial.

*Reversed and remanded.*