**People of the State of Illinois, Plaintiff-Appellee, v. Louis Johnson, Defendant-Appellant.**

Gen. No. 52,455.

First District, First Division.

May 19, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Louis Johnson, was charged with the crime of unlawful sale of a narcotic drug in violation of section 22–3 of the Criminal Code (Ill Rev Stats 1967, c 38, § 22–3). After a jury trial, he was found guilty and was sentenced to a term of not less than ten years nor more than thirteen years in the penitentiary.

The defendant contends, on appeal, that "he was denied due process of law when the court did not require the State to produce the real name of the alleged informer prior to trial and denied defense counsel's motion for a continuance."

The record shows that a public defender was appointed to represent the defendant in December, 1966. This same public defender continued to represent the defendant throughout the subsequent proceedings. On January 20, 1967, and again on March 1, 1967, the defendant answered ready for trial. When the case was called on March 7, the defense counsel orally moved that the State produce the informer who allegedly participated in the controlled

sale implicating the defendant. The prosecutor stated that the informer had died, whereupon the public defender asked for proof of death and proof that the deceased was in fact the informer. The court directed the State to disclose the name and last known address of the informer. The prosecutor said that the informer was Lulu Reed, but the public defender stated that she was also known by another name.[1]

When the case was called for trial on April 6, 1967, the defense answered ready for trial. The court inquired whether there were any motions to be decided and the prosecutor stated he did not think that any had been filed. The public defender said there were no motions to be filed and that any that had been filed had been decided. The cause was continued on the State's motion. The case was again called for trial on April 13. Both sides answered ready and when the court inquired whether there were any motions the public defender answered that they had all been taken care of earlier.

The case was called for trial again on April 14, 1967. The public defender informed the court that he thought that his motion requesting the true name of the informer had been denied, but that upon examining the record he found that the court had ordered the State to furnish him with the name and address of the informer. He stated that the State had not complied with the court's order and he requested compliance. On April 19, the public defender answered ready for trial. When he again requested the real name of the informer and the proper address the court commented that he inconsistently answered ready for trial and at the same time requested

---

[1] It was the contention of the defense counsel that there was never an informer. The defendant's counsel remarked that if the defendant was sworn he would state that there was no informer involved in the transaction in question. It should be noted that the defendant did not take the stand during the subsequent trial.

information about the alleged informer. Counsel replied "Judge, we are ready, and if we got the name now, that's fine. We are still ready. I don't believe giving the name or not giving the name has any affect on our ability to be ready for trial." On motion of the State the cause was continued to April 25, and the court ordered the State to furnish the defendant whatever information was in their files.

On the afternoon of April 25, both parties answered ready for trial and a jury was selected. Thereafter, in a chamber session, the public defender moved to exclude all witnesses from the courtroom. This motion was agreed to by the State. The State moved to nolle Count II of the indictment and the motion was allowed. The prosecutor then stated that the real name of the informer was Margaret O'Neal, that she was dead, and that her last known address was 5002 South Forrestville. The public defender requested a two week continuance "for the purpose of checking with the coroner's office to see if this person has existed, to see if this person died." Counsel also said the defense would need more time "so we could make an investigation as to who this informer was, if she was ever an informer. We have no way of checking this without some time." The court denied the motion for a continuance.

The record of the trial reveals that Officer Curtis H. Jackson and his partner, Officer Joseph Volpentesta, saw Lulu Reed, a special police employee, about 8:30 p. m. on August 26, 1966. Officer Jackson testified that Miss Reed did not have a handbag. He searched her coat which had two side slash pockets and observed that she put the $13.00 of marked money in her right hand side pocket of her coat and then drove her to the 4300 block of Prairie Avenue. There the police officer observed her talking to the defendant, Louis Johnson. Miss Reed then walked a short distance with the defendant

and stood on a corner while the defendant walked through an alley. When the defendant returned, the officers saw her take the money out of her right hand coat pocket and give it to the defendant. At that point the defendant left and Miss Reed returned to the car. They searched her again and found that the marked money was no longer in her possession. On the following day the officers again searched the informer and at 8:30 p. m. returned to the same area. Miss Reed met the defendant and talked with him for a while. The police officers observed the hands of Miss Reed and the defendant meet. Miss Reed then returned to the car and gave the officers a tinfoil package. The police drove up to the defendant, ran towards him, and though they saw him put a shiny object in his mouth they were unable to prevent him from swallowing it. At the police station they made a field test on the contents of the packet the informer had given them. The reaction was purple—positive. Officer Jackson then took the tinfoil packet to the crime laboratory. He further testified that Lulu Reed was also known as Margaret O'Neal and that she was now deceased. He produced a death certificate which was subsequently received in evidence. It showed that Margaret R. O'Neal died on February 8, 1967, that her residence at the time of her death was 5002 South Forrestville, in Chicago, that she was black, and that she was divorced.

On cross-examination, Officer Jackson testified that he had received the death certificate the day before trial. At this point the public defender requested leave to have the death certificate overnight. Leave was granted by the court. The public defender then asked Officer Jackson whether the informer was married and an objection was raised and sustained. In chambers the public defender argued that conflicting statements had been made by the prosecutor in that the prosecutor had stated that the informer's husband had also been an informer and the death certificate showed that the deceased had

been divorced. On further cross-examination the public defender then asked:

"Q. Where was Lulu Reed living on October 26, 1966?

"A. At 4253 South Prairie. I am sorry, no, she moved from there. I think she was staying at 50th and Forrestville then.

"Q. Who did she live there with?

"A. I don't know.

"Q. What name did she use there, if you know?

"A. Margaret O'Neal.

"Q. Where else had she lived?

"Objection.

"The Court: The question may be asked and answered.

"Q. Where else do you know where she lived, what other address?

"A. At 4253—I am sorry 4453 Calumet.

"Q. What name was she living there under?

"A. Margaret Leak.

"Q. What other name have you known her as?

"A. Margaret Robinson.

"Q. A dope addict, wasn't she?

"A. Yes, sir, she was a narcotics user.

"Q. How many times have you used her in the past, officer?

"A. Two or three times in the past."

Officer Jackson also testified that he had known the informer for more than two years.

Sergeant Charles Vondrak, assigned to the chemistry section of the Police Department, testified that he examined the contents of the tinfoil packet in question and was of the opinion it contained ciacetyl morphine hydrochloride, commonly referred to as heroin.

Officer Joseph Volpentesta was also called to testify. He substantially corroborated the testimony of Officer Jackson as to the details regarding the narcotics incident. On cross-examination, he testified that he had known Lulu Reed about two years and also knew her by the names of Margaret O'Neal and Margaret Robinson.

To begin with, we see no merit to the contention that the court did not require the State to produce the true name of the alleged informer. The record is clearly to the contrary. It further appears that on some occasions, as the trial judge pointed out, the defense would answer ready for trial and on others would answer ready requesting information regarding the reported death of the informer. Indeed the defendant went to trial without asking for this information and did not even ask for a continuance at the time. It was only after the jury had been selected and the prosecutor had divulged the true name of the witness that the issue of the true name of the informer was again alluded to by the public defender. This was also the first time that the defense requested a continuance.

 The granting of a continuance to permit preparation for a case is a matter resting within the sound judicial discretion of the trial judge, and we will not disturb the court's ruling on review unless it is shown that the discretion had been abused. People v. Latimer, 35 Ill2d 178, 220 NE2d 314. A conviction will not be reversed unless it appears that the refusal of additional time in some manner embarrassed the accused in the

preparation of his defense and thereby prejudiced his rights. The granting of a continuance to permit preparation for a case necessarily depends upon the facts and circumstances surrounding the request. People v. Solomon, 24 Ill2d 586, 182 NE2d 736.

The defendant refers us to three Illinois cases which recognize the importance of giving defense counsel sufficient time to prepare his client's defense. In People v. Kenzick, 9 Ill2d 204, 137 NE2d 270, the defense attorney appointed by the court less than thirty days before the trial date moved for a short continuance. His motion was supported by an affidavit setting forth that since the date of his appointment he had been actively engaged in the trial of many cases which involved more than nineteen days of actual trial and he was only able to confer with the defendant for short periods of time. In reversing and remanding the conviction the Illinois Supreme Court held that the appointed counsel, who was busy with prior commitments, should have been afforded reasonable time to obtain all the facts from the defendant and other witnesses. People v. Morris, 3 Ill2d 437, 121 NE2d 810, the second of defendant's three cases, concerned the question of competency of a court appointed attorney who had not seen the defendant until the day of trial. In People v. Hambleton, 399 Ill 388, 78 NE2d 293, the defendant was placed on trial the same day he was arrested. His counsel went to trial without any preparation.

██ It seems clear that these cases are distinguishable on the facts. In the case at bar, the defendant was informed by the State a month before the trial that the informer was dead and obviously would not be a witness. The court ordered the State to show defense counsel what information it had regarding this person and if the defendant needed it for his defense he had ample opportunity to obtain it. Instead, the defendant answered ready for trial on several occasions without demanding

further information. In fact, on one occasion the defendant's counsel expressed the view that the true identity of the informer would have no effect on his ability to be ready for trial. On another occasion the defense counsel said he wanted to check with the coroner's office to see if the informer had died. We believe that the court patiently and conscientiously attempted to aid the defense in every respect. We hold that the record does not reflect that the trial court was guilty of an abuse of discretion to the prejudice of the defendant in failing to grant a continuance under the particular facts and circumstances surrounding the request. People v. Barnes, 26 Ill2d 563, 188 NE2d 7.

In the instant case the State did not rely on the testimony of the informer. Experienced officers closely observed every movement of the defendant and informant on two separate occasions and it was upon their testimony that the defendant was found guilty. The same attorney represented the defendant throughout the proceedings and we are not persuaded after examining the record that the defendant's attorney was not given every opportunity by the trial court to adequately prepare his client's defense. The judgment of the Circuit Court is affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.