THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NELSON WEAVER, Defendant-Appellant.

(No. 54552;

First District—November 2, 1972.

Gerald W. Getty, Public Defender, of Chicago, (John T. Moran, Jr., and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Robert C. Samko, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

The defendant, Nelson Weaver, was indicted with Dennis Pearson for rape, aggravated kidnapping, theft, armed robbery and attempt to commit murder. He was tried separately in the circuit court of Cook County and found guilty by a jury of all the charges except armed robbery of which the jury found him not guilty. He was sentenced to 100 to 150 years for rape, 100 to 150 years for aggravated kidnapping, 5 to 10 years for theft, and 10 to 15 years for attempt to commit murder, which sentence was to be consecutive to the first three concurrent sentences. He appeals.

The defendant raises three issues: 1. He contends that he was denied his right to effective assistance of counsel, and the trial court abused its discretion in refusing to grant him a continuance to complete his preparation for trial. 2. He contends he was denied a fair trial, and argues that the trial court erred in admitting evidence at trial of the injuries received by the complaining witness, and further, argues that the prosecutor made prejudicial statements in his closing argument to the jury. 3. He contends that he cannot lawfully be required to serve consecutive sentences.

We affirm.

The complaining witness at trial was Mrs. Sally Heaton. She testified that on October 22, 1968, at 11:30 P.M. she finished work at the Michigan Bell Telephone Company in Kalamazoo, Michigan, and that she went to the Capri Lounge in Kalamazoo where she met some co-employees. Shortly after her arrival, the defendant and Dennis Pearson joined her and her friends at their table.

The evidence showed that at approximately 1:30 A.M. or 2:00 A.M. Mrs. Heaton and the other women decided to leave. Once outside the lounge, Mrs. Millie Van Tyne, who had been at the table, asked Mrs. Heaton if she would give the two men a ride to Mattawan, Michigan, where Mrs. Heaton lived with her husband and children. Mrs. Van Tyne

referred to the two men as her friends. Mrs. Heaton reluctantly agreed, and the two men got into her car.

The three proceeded west on Interstate 94 toward Mattawan. Mrs. Heaton got off the highway at the Mattawan exit, and at the direction of the two men she turned down a road where they said they were to meet a friend. The defendant pulled a gun on Mrs. Heaton, told her they wanted her car, and forced her into the back seat where Pearson struck her, forcibly removed her clothing and forcibly had an act of intercourse with her without her consent. With the defendant as driver, they drove fifty miles west to Benton Harbor, Michigan, where, on a dead end road near the highway, both the defendant and Pearson forced her to have intercourse with them. They then proceeded through Chicago by early morning and stopped on a small county road in the vicinity of Barrington Road and the Northwest Tollway in Cook County, Illinois, where both men again forced her to have intercourse with them. Following this, the defendant attempted to strangle her, pulled her out of the car and shot her in the back of the head. She lost consciousness at this point. The evidence further showed that she was shot three more times, once more in the head leaving multiple bullet fragments in her brain and head, once in the neck and once in the hand.

After she regained consciousness, she staggered toward the highway and was seen by Richard Ashby, a motorist who was travelling along the Northwest Tollway. He stopped and took Mrs. Heaton to the Northwest Community Hospital in Arlington Heights, Illinois. The evidence further showed that on October 24, 1968, the automobile of the complainant was found in a parking lot in Chicago.

Dr. Fredrick Volini, a licensed physician and specialist in pathology, testified at trial that vaginal swabs taken from Mrs. Heaton contained sperm.

Dorothy Lamb, who had been with Mrs. Heaton at the Capri Lounge testified that upon leaving the lounge she saw Weaver in Mrs. Heaton's car and Pearson standing at the passenger door.

The only witness presented for the defense was Mary Weaver, the wife of the defendant. She testified that her husband was with her in Battle Creek, Michigan, during the time when the offenses were committed. In rebuttal, Jerry Thomason, an F.B.I. agent, testified that Mrs. Weaver told him at the Kalamazoo County Sheriff's Department that she saw the defendant in the afternoon of October 22, 1968, and did not see him again until October 28, 1968.

The defendant's first contention is that he was denied his right to effective assistance of counsel and that the trial court abused its discre-

tion in refusing to grant his counsel a continuance to complete their preparation for trial.

■■ In the instant case counsel for defendant was appointed on February 25, 1969, and after a series of continuances, the case was set down for trial on April 23, 1969. On April 18, 1969, defense counsel filed a written motion for a continuance accompanied by a supporting affidavit alleging that due to prior commitments he was unable to investigate the facts of the case properly and was, therefore, totally unprepared to represent the defendant. This motion was denied by the trial court. Previous to this motion, defense counsel requested and received a list of witnesses, a list of the physical evidence and answers to his request for a bill of particulars. The defendant was also granted three continuances prior to the denial of his written motion of April 18. On March 31, 1969, trial was set for April 23, 1969, and defense counsel was informed of this. Even though this case involved contacting and interviewing witnesses in Michigan as well as Illinois, defendant had two attorneys representing him during the pre-trial period, and defense counsel's petition for attorney's fees showed that counsel spent part or all of 34 days in preparation for the trial. In response to defendant's motion for a continuance, the prosecutor urged that the trial proceed before the State's principal witness, Mrs. Sally Heaton, was to undergo major surgery as a result of the multiple head wounds that she received. We think that the trial court properly denied defendant's motion for continuance, and in view of the above circumstances, we find no abuse of discretion in the trial court's refusal to grant another continuance.

■■ In *People v. Solomon* (1962), 24 Ill.2d 586, at 589, 182 N.E.2d 736, at 738, the Court said:

> "The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. (*People v. Surgeon*, 15 Ill.2d 236, 154 N.E.2d 253; *People v. Clark*, 9 Ill.2d 46, 137 N.E.2d 54.) Before a judgment of conviction will be reversed because of the denial of such a motion, it must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights."

Nor do we think that the rights of the defendant were prejudiced as a result of inadequate pre-trial preparation. In defendant's motion for a continuance, he complained that his defense would be prejudiced because of the unavailability of his alibi witness, Mrs. Mary Weaver, and the absence of her testimony. Subsequently, the State cooperated with de-

fense counsel in locating Mrs. Weaver, and her testimony was presented to the jury for their consideration. In addition, the record does not disclose anything but able representation of the defendant which certainly did not prejudice his rights.

■■ Defendant relies heavily on *People v. Kenzik* (1956), 9 Ill.2d 204, 137 N.E.2d 270, in arguing that the trial court abused its discretion in refusing to grant the continuance. We distinguish the *Kenzik* case from the facts of this case. In *Kenzik*, counsel was appointed for the defendant on April 4, 1955, and the case was set for trial on May 2, 1955. On the latter date defense counsel filed a motion for a continuance supported by affidavit, which stated that since his appointment to represent Kenzik, he spent more than 19 days on prior trial commitments, he conversed with the defendant only three times, for only 15 to 20 minutes on each occasion, and he was not able to properly investigate the facts and consult with witnesses. The Supreme Court of Illinois in reversing the conviction stated that appointed counsel busy with prior commitments must be afforded reasonable time to prepare his case. (*People v. Kenzik*, 9 Ill.2d 204, 213, 137 N.E.2d 270, 275.) In the instant case, counsel's petition for fees and his pre-trial preparations and motions show that in the time between appointment of counsel and trial, the defendant was effectively and ably represented.

■■ The defendant contends that the court erred in admitting irrelevant and prejudicial evidence of the extent of the injuries received by the complaining witness. The defendant points to four statements made during testimony at trial. In two instances defense counsel's objections to the testimony were sustained; in the other two instances no objections were raised. We need consider only those statements to which objection was raised at trial since errors in the admission of testimony if not objected to are deemed to be waived. *People v. Lee* (1969), 44 Ill.2d 161, 254 N.E.2d 469.

■■ At trial, Rita Roberts and Dorothy Lamb both testified that they saw the complaining witness Sally Heaton in the hospital while she was recovering from her injuries. The court sustained defense counsel's objections to this testimony and in both instances instructed the jury to disregard the witnesses' response. In light of the trial court's admonition in both these instances, we find that any alleged prejudice that may have been left with the jury was cured by the trial court's action.

The defendant cites *People v. McGeoghegan* (1927), 325 Ill. 337, 156 N.E. 378, as authority for the proposition that the court committed reversible error in not admonishing the prosecutor after he asked alleged improper questions. That case is distinguishable from the instant case. In *McGeoghegan*, the prosecutor harassed the witnesses with prejudicial

306

questions and remarks. The court did not admonish the prosecutor but congratulated him for a fine trial. The Supreme Court commented that the jury was bound to receive a biased impression of the prosecutor's case, and the misconduct of the State's Attorney could serve no other purpose than to inflame and prejudice the jury against the defense attorney as well as against the defendant. The facts in the instant case are different. In light of the court's instruction to the jury to disregard the improper responses, we cannot say that the testimony of the two witnesses prejudiced the defendant's case.

No objection was raised at trial to the statements of Richard Ashby, the motorist who took the injured Sally Heaton to the hospital, and Dr. Keith Wurtz, the doctor who treated Sally Heaton. Ashby testified that upon picking up Mrs. Heaton, her hair was matted with blood, she had blood on her face and blood on her legs. Dr. Wurtz testified to the nature and extent of Mrs. Heaton's injuries, including the gunshot wounds in her head and hand and bruises on her neck and face. His description was brief and dispassionate. Although we find that defendant waived any errors in the admission of these statements, we have considered defendant's argument. The defendant relies on *People v. Nickolopoulos* (1962), 25 Ill.2d 451, 185 N.E.2d 209, as authority for his proposition that above statements are prejudicial. In *Nickolopoulos,* the defendant was found guilty of assault with intent to commit murder. Over objection of defendant, testimony was admitted as to the nature and extent of the victim's injuries. It was undisputed that the defendant shot the victim. The only issue in the case was whether defendant had the specific intent for the offense, or whether because of his intoxication he lacked it. The court ruled that evidence as to the extent of the victim's injuries was irrelevant to the issue of defendant's intoxication.

In the instant case, the defendant Weaver denied committing any of the offenses charged, and the State had to prove every element of the offenses. The nature of Mrs. Heaton's gun wounds and neck injuries was relevant to the element of intent included in the offense of attempt to commit murder. (*People v. Coolidge* (1963), 26 Ill.2d 533, 187 N.E.2d 694.) Other facial injuries were relevant to the element of force included in the offense of rape. (*People v. Faulisi* (1962), 25 Ill.2d 457, 185 N.E.2d 211.) The testimony describing these injuries was presented in a fair and non-prejudicial manner.

The defendant next contends that certain comments in the closing argument of the prosecutor were so prejudicial as to deny him a fair trial. We find no merit in this contention. Defendant puts these comments into three categories. First, he argues that the comments relating to the gunshot wounds of the complaining witness were grossly prejudicial. No

objections during the closing arguments were raised to these comments. Errors made by way of improper comments during closing argument which are not objected to are deemed to be waived unless these comments prevented the defendant from receiving a fair trial. (*People v. Fort* (1970), 119 Ill.App.2d 350, 256 N.E.2d 63.) In the instant case the remarks of the prosecutor were based on evidence that was properly admitted at trial. Arguments based on facts in evidence or on legitimate inferences deductible from the evidence may be the subject of fair comment. *People v. Brown* (1971), 270 N.E.2d 501.

■■ Second, defendant argues that in his closing argument the prosecutor accused defense counsel of attempting to trick the jury, of lying to them, and of maligning the complaining witness. The statements were made in response to defense counsel's closing argument. In his closing argument, defense counsel commented on the evidence in such a way as to imply that rape occurred because there was consent on the part of the complaining witness. The prosecutor replied that defense counsel, by interpreting the evidence in this manner, was maligning the victim and trying to fool the jury. Although a prosecutor's remarks may be subject to criticism, unless they constitute a material factor in the conviction or are such that prejudice to the defendant is their probable result, the verdict will not be disturbed. (*People v. Brown* (1971), 270 N.E.2d 501.) The prosecutor's remarks were not prejudicial, and were a legitimate response invited by defense counsel's implication that Sally Heaton was an unfaithful wife. *People v. Johnson* (1971), 2 Ill.App.3d 1067, 278 N.E.2d 177; *People v. Wheeler* (1955), 5 Ill.2d 474, 126 N.E.2d 228.

■■ Third, defendant argues that the prosecutor made statements in his closing argument which were not based on the evidence. The prosecutor referred three times to Sally Heaton as a woman "who had been taken away from her home by two men in the middle of the night." Defendant argues that the use of the word "home" was improper and prejudicial since the evidence adduced at trial indicated that the defendant Weaver and Mrs. Heaton left from the Capri Lounge. Defendant raised an objection to the use of the word "home" in his oral motion for mistrial. The motion was properly denied. The evidence at trial clearly showed that the events on the night of October 22, 1968, leading up to the journey of the victim and her assailants, took place at the Capri Lounge. In view of the overwhelming evidence of the defendant's guilt, the remarks were not so confusing as to require reversal. *People v. Nicholls* (1969), 42 Ill.2d 91, 245 N.E.2d 771.

■■ In his final contention, defendant argues that the imposition of consecutive sentences on him was unlawful. He complains that the trial court did not use the language necessary to impose valid consecutive

sentences, and that as a result, the sentences are concurrent as a matter of law. In the alternative, he argues that even if consecutive sentences were imposed, they could not be allowed to stand since his convictions for aggravated kidnapping, rape, theft, and attempt to commit murder all arose out of the same transaction. The same two arguments were rejected by the Illinois Supreme Court in the recent case of *People v. Pearson*, 52 Ill.2d 258; 287 N.E.2d 715. *Pearson* involved the trial of Nelson Weaver's co-indictee, Dennis Pearson. Pearson, like Weaver, was found guilty of aggravated kidnapping, rape, theft and attempt to commit murder. The testimony of Mrs. Heaton and the State's evidence in *Pearson* was essentially the same as in the instant case. The trial court imposed concurrent sentences of 100 to 125 years for aggravated kidnapping, 100 to 125 years for rape and 5 to 10 years for theft on Pearson. The court's order also stated: "On the charge of attempted murder, you are sentenced to the penitentiary for not less than 10 nor more than 15 years, this sentence to be consecutive to the three sentences already imposed." The court's order in the instant case is almost identical to the order in *Pearson*. The trial court imposed concurrent sentences of 100 to 125 years for aggravated kidnapping, 100 to 125 years for rape, and 5 to 10 years for theft on Weaver. The court's order continued: "On the charge of attempted murder you are sentenced to the penitentiary for a period of not less than ten and no more than 15 years, this sentence to be consecutive to the three concurrent sentences already imposed." In finding that the trial court's language was sufficient to impose a valid consecutive sentence and that consecutive sentence was properly imposed on the attempt to commit murder charge, we follow the reasoning of *Pearson* which is dispositive of this issue. *People v. Pearson, supra.*

■■  Defendant further contends that the use of the phrase "consecutive to" in the trial court's order was not definite enough to indicate whether the sentence for attempt to commit murder preceded or followed the three concurrent sentences. We find no merit in this argument. The meaning of the court's order is clear enough, and it sufficiently specifies which sentence is to be served first.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.