(No. 38679.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM LOUIS GRAY, Plaintiff in Error.

*Opinion filed Sept. 28, 1965.—Rehearing denied Nov. 18, 1965.*

ARTHUR J. SABIN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOSEPH GILL, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

By jury verdict defendant was found guilty of armed robbery in the former criminal court of Cook County and subsequently sentenced to imprisonment for 20 to 40 years. The direct review here is predicated upon the presence of constitutional problems.

Larry Arterburn, a United Parcel Service delivery man, testified that he was making a delivery at 3249 West 16th Street, Chicago, when defendant accosted him in the hallway, held a knife to his throat and said, "Give me your money or I'll kill you." Arterburn said defendant took $9 in currency from him, thereafter lowering the knife. Arterburn then turned around and went back to the apartment where he had just made a delivery to tell the occupants to call the police, that a robbery was occurring. Defendant at that time stabbed Arterburn three times in the back. Arterburn nevertheless succeeded in knocking defendant down. During the ensuing struggle the defendant continued to stab

him. Suddenly Arterburn's muscles "relaxed" and defendant ran out the door of the building. Arterburn gave chase and caught defendant in the street, succeeded in disarming him, and attempted to hold him down. At this juncture, two sheriff's police arrived, broke up the tussle, and held defendant until Chicago police officers arrived. The knife was turned over to the latter, and defendant was searched. Police testified they found $9 plus two C.O.D. receipts with blood marks on them, which Arterburn stated had been taken from him.

Defendant was transported to a district police station where he was questioned and, the officers testified, orally admitted to police that he had robbed and stabbed Arterburn. John Mangan, security officer for United Parcel Service, stated that defendant, upon being asked to repeat what he had related to the police officers, admitted the holdup and stabbing to him.

Defendant testified that he was accosted by Arterburn at 3249 West 16th Street, while going to a friend's apartment to recover a loaned coat. As he was walking into the hallway, Arterburn was standing at the top of the steps and shouted to defendant not to approach him further. Defendant thought Arterburn to be drunk and continued walking up the stairs whereupon Arterburn accused defendant of trying to rob him and brandished a knife. Defendant tried to grab the knife, cut his hands thereon, pushed Arterburn against the wall, and ran out of the building with Arterburn giving chase. Arterburn finally caught up with defendant and a struggle ensued, during which defendant managed to get the knife and stabbed Arterburn several times. The two sheriff's police then arrived, broke up the affair and took the knife from defendant.

Defendant further stated that, upon being accused by Arterburn of trying to rob him, defendant requested the sheriff's police to search him, which they did and found nothing on him but $12 of his own money; Chicago

police subsequently arrived and took defendant to a district police station, where he was beaten and asked to sign·a written statement. He refused. Defendant also denies making the oral confessions.

Defendant was indicted for robbery and attempted murder (a mistrial was subsequently declared as to the latter charge) and was arraigned on June 11, 1962. There is some confusion evident as to whether defendant was then represented by the public defender as the result of a prior appointment. The judge stated he was, but no such order appears in the record. But it is clear that, at defendant's request, John Roach, a Chicago Bar Association Defense of Prisoners Committee attorney, was appointed to represent defendant. On June 25, 1962, attorney Roach asked leave to withdraw on the grounds that defendant did not wish to cooperate with him. Defendant acquiesced, whereupon the court allowed the withdrawal. Defendant subsequently asked for another attorney other than the public defender, but the court refused and appointed the public defender who thereafter handled defendant's case. (On July 17 a continuance was granted defendant to September 4 to enable his family to secure private counsel which they apparently did not do.)

As we understand defendant's argument, it is that the 6th amendment to the United States constitution, as interpreted in *Gideon* v. *Wainwright,* 372 U.S. 335, 9 L. ed. 2d 799, 83 S. Ct. 792, guarantees him, as an indigent, the right to counsel in a noncapital criminal case where the punishment may be imprisonment in the penitentiary; that this right, in the State of Illinois, has been implemented by the requirements of section 2 of division XIII of the Criminal Code (Ill. Rev. Stat. 1961, chap. 38, par. 730.), which provides that "Every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel," and further provides in the third paragraph that for an indigent defendant in a capital case "it shall be

the duty of the court to appoint *one or more* competent counsel \* \* \*" (emphasis ours), and section 4 of the act relating to public defenders (Ill. Rev. Stat. 1961, chap. 34, par. 5604), which states that "Any court may, with the consent of the defendant, appoint counsel other than the public defender, and *shall so appoint* if the defendant or accused shall so demand." (Emphasis ours.) From the provisions of section 4 defendant produces an apparently unqualified right to demand repeated appointments of non-public defender attorneys. He then argues that if section 2 of division XIII is construed to limit the number of counsel who may be appointed in noncapital cases to one, or less than the number who may be appointed in capital cases, the limitation is unconstitutional under *Gideon* which abolished the distinction formerly existing between the two types of cases under *Betts* v. *Brady,* 316 U.S. 455, 86 L. ed. 1595, 62 S. Ct. 1262. But neither here nor in the trial court has defendant argued that his case required multiple counsel, and we therefore need not concern ourselves with the limitation, if any, upon the appointment of multiple counsel in noncapital cases, although we note that the statute need not be read so as to exclude the appointment of multiple counsel for an indigent defendant in a noncapital case, and certainly there appears nothing to prohibit appointment of successive counsel in those cases where good cause therefor exists.

Defendant next argues that, under section 4 of the Public Defender Act (Ill. Rev. Stat. 1963, chap. 34, par. 5604,) the court was required to appoint an attorney other than the public defender pursuant to defendant's request even though such attorney originally appointed had been allowed to withdraw and this action had been acquiesced in by him. We do not agree. While constitutional requirements obligate society to supply an indigent defendant's need for counsel, (*Gideon* v. *Wainwright,* 372 U.S. 335, 9 L. ed. 2d 799, 83 S. Ct. 792), it is neither constitutionally necessary nor legislatively intended that selection of appointed counsel shall be un-

qualifiedly vested in the defendant. Such interpretation would enable defendants to delay trial by alienating successive appointed nonpublic defender attorneys until they withdraw or until one is appointed who agrees with defendant's particular trial tactics and strategy regardless of the propriety thereof. Such is not the legislative intent. Once a nonpublic defender attorney is appointed, pursuant to defendant's request, he has no further right to have another appointed after the withdrawal of the first in the absence of a clear showing of incompetence or prejudice to the defendant. He must then accept a competent attorney selected by the court, whether public defender or otherwise. As has been persuasively stated: "I have always believed the law to be that the choice of counsel for indigent persons accused of crime was the court's and not the defendant's. Otherwise, pre-eminence at the bar would be the surest road to bankruptcy. In making the assignment, the court concerns itself with the qualification of the appointee to perform the task. * * * It has been my understanding that the courts need have no concern with the private predilections of the defendant for a lawyer of a specified color, * * * sex or age or political affiliation; and that the defendant may not name the lawyer whom the court must appoint. * * *

"It seems to me the choice must be the court's and not the defendant's and that such a choice should not be subject to impeachment on the ground of a claimed displeasure with the appointment or lack of confidence in the attorney unless there is good cause why the appointment should not have been made. Even for those who can afford the luxury, the power to choose one's counsel is not as broad as the right. The preferred attorney may not be available or his price may be beyond reach or he may be unwilling to undertake the retainer. * * * As between conferring that power upon the defendant, who will take account of no consideration but his own desires, and the court, which can and will take other items into view, I believe the balance of ad-

vantage lies in vesting that power in the court." (*United States* v. *Thompson*, (S.D.N.Y.) 56 F. Supp. 683. See also *United States* v. *Maroney*, (W.D. Pa.) 220 F. Supp. 801; *Wilson* v. *United States of America*, (W.D. Va.) 215 F. Supp. 661; *Commonwealth* v. *Drolet*, 337 Mass. 396 149 N.E. 2d 616; *People* v. *Cox*, 22 Ill.2d 534.) We therefore hold that section 2 of division XIII of the Criminal Code and section 4 of the act relating to public defenders require appointment of nonpublic defender counsel in the first instance when requested by an indigent defendant, but that subsequent appointments may be either of the public defender or other lawyers as the court may, in the exercise of its sound discretion, decide. No abuse of such discretion is indicated here.

Defendant further maintains that his trial counsel was incompetent in that he was so inadequately prepared at the time of the trial as to effectively preclude meaningful representation. The question of competency of counsel is one of fact and cannot be based solely upon assertions, (*People* v. *Wolff*, 19 Ill.2d 318; *People* v. *Francis*, 356 Ill. 74), and we have previously held that incompetence will not be inferred from the fact that trial was commenced shortly after the appointment of counsel. *People* v. *Street*, 353 Ill. 60.

Moreover, it is well settled that "[t]o warrant a reversal because of incompetency of counsel, the record must clearly establish not only that counsel performed his trial duties in an incompetent manner, but also that defendant was substantially prejudiced thereby. (*People* v. *Morris*, 3 Ill.2d 437.)." (*People* v. *Robinson*, 21 Ill.2d 30, 36). The record herein fails to establish either requirement. Defendant's initial argument on this point is that counsel's failure to move to suppress the alleged oral confessions was tantamount to no representation at all. However, defendant testified that no confessions were ever made. We cannot say that, where alleged confessions are denied as having ever been made, incompetency of counsel is indicated by the ab-

sence of a motion to suppress them. As a matter of trial tactics, counsel evidently relied upon his client's testimonial denial of ever having stated that he committed the crime. This is not unusual, as under the former practice where defendant denied making a confession it was unnecessary for the trial court to grant a hearing on a motion to suppress. *People* v. *Hegovic,* 348 Ill. 58; overruled in *People* v. *Norfleet,* 29 Ill.2d 287.

Other arguments appearing in defendant's brief on this point amount to little more than conjecture and speculation. We hold, therefore, that upon this record, the evidence is manifestly insufficient to indicate that defendant's trial counsel was incompetent.

Defendant next contends that the evidence adduced at the trial, which is reviewed at some length earlier in this opinion, is insufficient to prove him guilty beyond a reasonable doubt. This court has previously held that the testimony of one witness, if positive and credible, is sufficient to convict, even though it is contradicted by the accused. (*People* v. *Solomon,* 24 Ill.2d 586; *People* v. *Cox,* 22 Ill.2d 534; *People* v. *Tunstall,* 17 Ill.2d 160; *People* v. *Pride,* 16 Ill.2d 82; *People* v. *Arnold,* 2 Ill.2d 92.) Here the complaining witness's testimony was clear and positive and in addition was corroborated by the testimony of a police officer and the testimony concerning the oral admissions of guilt. We believe the jury, under these circumstances, could properly reject the testimony of defendant and accept that of the complaining witness.

The final question herein is whether the sentence, which is concededly within the statutory limit (Ill. Rev. Stat. 1961, chap. 38, par. 18—2, provides for an indeterminate term, the minimum sentence for armed robbery being one year) was so unduly severe as to warrant reduction by us under Ill. Rev. Stat. 1963, chap. 38, par. 121—9(b)(4). It is clear that in passing sentence upon a guilty criminal, the trial judge is invested with judicial discretion within the

limits of punishment fixed by law. (I. L. P., Criminal Law, § 815.) While the sentence herein is severe, we believe it to be justified under the circumstances shown. Defendant had been twice previously convicted of felonies and had violated probation granted after his first conviction. In addition to the penitentiary terms served on these convictions, he was sentenced to the State Penal Farm on a third offense and had been released only some four months prior to this armed robbery.

Accordingly, and for the foregoing reasons, the judgment of the then criminal court of Cook County is affirmed.

*Judgment affirmed.*