THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRED GORE, Defendant-Appellant.

(No. 56542;

First District—May 24, 1972.

Patrick T. Murphy and James E. Haddad, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James N. Karahalios, Assistant State's Atorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Fred Gore, was charged by indictment with the murder of Thurman Williams and with aggravated battery upon Earl Hollins. He entered a plea of not guilty, and after a trial before a jury was found guilty of both offenses. He was sentenced to the penitentiary for a term of not less than twenty-five nor more than forty years for murder and for a term of not less than four nor more than ten years for aggravated battery, the sentences to run concurrently. He appealed directly to the Supreme Court and by transfer of that court the appeal was assigned here.

It is strenuously urged by the defendant that the trial court erred in overruling his motion for a continuance. This contention necessarily requires a recital of the chronological events leading up to trial.

The indictment was returned on November 14, 1969. Three days later, Patrick T. Murphy filed his appearance as private counsel for the defendant. After arraignment on November 21, 1969, the cause was assigned to Judge Philip Romiti for trial and then reassigned to Judge Robert J. Collins after a motion for change of venue presented by Mr. Murphy was granted. On the same day Mr. Murphy filed a lengthy four page motion for discovery with a six page supporting memoranda. At the same time he also filed a written motion to place the defendant on bond. On November 25, 1969, the Court allowed the defendant's discovery motion in part, but on motion of the State the hearing on the question of bond was continued. Evidence was heard on the motion to set bail on December 3 and December 8, and on the latter date the motion was denied. When the Court inquired of Mr. Murphy what date would be convenient for trial he replied, "today" and stated that he was then ready to select a jury. The trial judge informed the parties that he could not hear the matter on that day since he then had another case on trial. The prosecutor suggested January 12, 1970, and the cause was continued to that date on the motion of the State. On January 5, 1970, Mr. Murphy filed a motion for a change of venue which was granted, and the case was reassigned to Judge Robert J. Downing for trial.

Judge Downing suggested February 2, 1970, as the trial date. Mr. Murphy asked for an earlier date and pursuant to his request the cause was set for trial on January 26 with subpoenas. On the latter date, Mr. Murphy sought a continuance to February 4th, because he said he had been unable to ascertain whether Clarence Conn, Earl Hollins and Thomas Barber, the principal witnesses for the State, lived at the addresses given on the list of witnesses and because he desired to interview these three prior to trial. The prosecutor opposed the motion and pointed out that after extensive cross-examination of Hollins and Barber

at the bond hearing, Murphy had answered ready for trial on December 8, 1969. The prosecutor further stated that Conn, who was residing in witness quarters of the State's Attorney's office, would be made available at the convenience of the defense. The Court, after considering the argument of counsel announced that the case would be continued until January 29th. Murphy then informed the Court that another attorney wished to enter the case.

At this point, R. Eugene Pincham asked leave of court to file his appearance as co-counsel instanter. The Court commented that the defendant was entitled to have counsel of his own choice, but stated that the case had been set for trial on that date by agreement of the parties.

Mr. Pincham suggested that the matter be continued to February 16th so that he could confer with the defendant and interview witnesses. The Court rejected this request and continued the case to January 29th with subpoenas. Leave was given to Mr. Pincham to file an appearance, and the prosecutor was directed to make available to counsel any witnesses in witness quarters. Pincham refused to file an appearance since his motion for continuance was denied, and he stated that the Court by setting the case on January 29, 1970, was depriving the defendant of his constitutional right to counsel of his own choice.

On January 29, 1970, Mr. Murphy presented a written motion for a continuance and Mr. Pincham joined in that request. After hearing extensive argument of counsel and reviewing the transcript of the prior proceedings, the Court set the cause for trial on February 2nd and denied the motion for a longer continuance. On the latter date, Mr. Murphy answered not ready for trial and renewed his motion for a continuance. The defendant addressed the Court and personally joined in the request. The motion was denied and the cause proceeded to trial.

The defendant contends that the trial court's denial of his motion for a continuance deprived him of a fair trial because his privately retained counsel did not have an adequate opportunity to prepare for trial. A written motion for continuance was filed on January 29, 1970. Defendant's attorney, Patrick Murphy, in an affidavit submitted in support of the motion indicated with reference to his lack of preparation that he had been engaged in other matters on January 27th and 28th and that he had not yet received back the transcript of the bond hearing which had been filed in the Supreme Court. Paragraph 6 of the affidavit stated, "That on 26 January, 1970 the defendant for the first time moved for a continuance to allow the affiant to interview the State's witnesses and two additional alleged eye-witnesses who purportedly agree with the defendant's version of the case."

It is argued that the addresses given on the witness list for Clarence

Conn, Earl Hollins, and Thomas Barber, were inaccurate and that as of January 26, 1970, defense counsel had been unable to contact these three. The witness list was delivered to the defendant over a month prior to trial. The record reveals that both Earl Hollins and Thomas Barber were cross-examined extensively at the previous bond hearing. On January 26th the Assistant State's Attorney indicated that Clarence Conn was residing in witness quarters and that Conn would be made available at a time convenient to the defense. Prior to trial, Mr. Murphy contacted Earl Hollins and Clarence Conn, but the two men refused to talk to him. The record shows that Mr. Murphy had sufficient opportunity to contact, interview, or question these witnesses.

■■ The statement in the affidavit with reference to the "two additional eye-witnesses who purportedly agree with the defendant's version of the case" is very general. The names, addresses, or whereabouts of these individuals are not included and little is said concerning testimony which they would purportedly give if called as witnesses. A full week elapsed between January 26th and the commencement of trial, and there is no showing in the record that this was not sufficient time to contact and interview these persons. An accused in a criminal proceeding may obtain a continuance to bring into court a material witness who is unavailable where there is a reasonable probability that the individual can be found, Section 114—4(b)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 114—4 (b) (3) ); however, a general allegation that witnesses may be discovered does not necessarily warrant the granting of a continuance. See: *People v. House*, 73 Ill.App.2d 345, 219 N.E.2d 580.

The defense counsel as the affidavit points out was engaged in other matters on January 27th and 28th, but he had no conflicting responsibilities when the trial began five days thereafter. The transcript of the bond hearing was available for trial and was used for the purposes of impeachment.

■■ The standard which must be applied in determining whether a trial court erred in denying a motion for continuance to enable an accused's counsel to prepare for trial was set forth in *People v. Storer*, 329 Ill. 536, at 539-40, 161 N.E. 76 at 78:

"A defendant in every criminal case is entitled, under the law, to a reasonable time and full opportunity to prepare for his trial, and that right is one guaranteed to him by the Constitution. What is a reasonable time for the preparation of a case, and what time should be granted counsel for that purpose must necessarily depend upon the facts and circumstances of each case and is a matter largely resting in the sound discretion of the trial court, which will only be disturbed

on review in a court of appeal when it is shown that discretion has been abused."

The period of time allowed need not be lengthy as long as it is sufficient to give an accused and his counsel an opportunity to prepare. In *People v. Bond*, 99 Ill.App.2d 45, 241 N.E.2d 218, the defendant was accused of attempted murder. On the day of trial, his attorney who had been appointed 17 days earlier, sought a continuance on the ground that he had not had time to contact the 32 persons named on the witness list. It was pointed out that the defendant who was incarcerated was unable to assist in the preparation for trial. The motion for continuance was denied even though several names were added to the witness list just prior to trial. On review, the Appellate Court held that the trial court had not abused its discretion in denying the motion for continuance.

■■ Whether there has been an abuse of discretion necessarily depends on the facts in each particular case. (*People v. Singer*, 288 Ill. 113, 123 N.E. 327.) In the instant case, the indictment was returned on November 14, 1969, and three days later, Patrick Murphy filed an appearance on behalf of the defendant. At the conclusion of a bond hearing on December 8, 1969, Mr. Murphy announced that he was ready and demanded immediate trial, but the matter was continued on motion of the State. On January 5, 1970, Mr. Murphy stated that he was not prepared for trial and the matter was continued by defense motion to January 26, 1970. The cause was again continued to January 29, 1970, and proceeded to trial four days later on February 2, 1970. We cannot say that the trial court abused its discretion in denying the motion for additional time to prepare where privately retained counsel had nearly two and one-half months to investigate the facts, where two months prior to trial defense counsel answered ready, where a continuance for three weeks was granted upon request of the defense and where the trial did not begin until one week after the motion for continuance was denied.

The time allowed defense counsel to prepare in the cases cited by the defendant was much less than in the instant case. In *People v. Dunham*, 334 Ill. 516, 166 N.E. 97, the defendant, who was charged with knowingly passing forged checks, was forced to trial nine days after his indictment and within a week of arraignment. Two days after arraignment, and five days prior to trial, the defendant, by affidavit, stated that he had engaged the services of an attorney, but that due to involvement in other cases his lawyer could not be prepared for trial during the present term of court. The motion was denied. The Supreme Court in reversing the conviction held that no person accused of a serious crime should be required to stand trial without a reasonable opportunity to employ counsel and to prepare his defense properly. In *People v. Crump*, 5 Ill.2d 251,

125 N.E.2d 615, the defendant was accused of murder and the State was seeking the death penalty. Prior to the scheduled date of trial, the defendant's lawyer moved for a continuance on the ground that he had been unable to prepare as a result of other matters in which he was involved. A witness list containing 48 names was delivered on the day the motion was argued. The Supreme Court, in reversing the conviction stated, (5 Ill.2d at 263, 125 N.E.2d at 622), "Ten or eleven days to investigate 48 State witnesses and to prepare for cross-examination thereof and to prepare the defense in chief in a capital case can hardly be deemed reasonable and the trial court should have continued the case to a later date." In the instant case, defense counsel had nearly two and one-half months to prepare, the witness list was delivered a full month prior to trial, and the State was not seeking the death penalty.

It is further argued that the trial court abused its discretion and deprived the defendant of his right to counsel of his own choice by refusing to grant a continuance to enable a second and more experienced attorney to become familiarized with the facts and thereafter to participate in the case as co-counsel. On the date set for trial, R. Eugene Pincham requested leave to file an appearance as co-counsel for the defendant and sought a two or three week continuance in order to acquaint himself with the case. When the motion for continuance was denied, Mr. Pincham declined to enter an appearance.

■■■ An accused charged with a felony is entitled to select counsel of his own choice, or if he is indigent, to have counsel appointed by the Court. (U.S. Const. amend. VI and amend. XIV, Ill. Const. art. II, sec. 9, and Section 113—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 113—3).) Once counsel is appointed by the Court or selected by the accused, he must be given a reasonable period of time in which to prepare the defense. (*People v. Blumenfeld*, 330 Ill. 474, 161 N.E. 857.) The accused has the right to discharge his attorney or to substitute atorneys at any time; however, this right may not be exercised in such a way as to interfere with or thwart the prompt administration of justice. (*People v. Mueller*, 2 Ill.2d 311, 118 N.E.2d 1.) As is pointed out in *People v. Crawford*, 23 Ill.2d 605 at 608, 179 N.E.2d 667 at 669, "It is clear that the right to a reasonable time in which to prepare for trial cannot be construed to permit a defendant to postpone his trial date indefinitely by changing counsel on the day of trial."

■■ In the case before us, a privately retained attorney entered an appearance for the defendant three days after an indictment was returned. This attorney who was a personal friend of the defendant, filed discovery motions, represented the defendant at a bond hearing, investigated the facts, answered ready for trial and a month later obtained a

three week continuance for further preparation. The defendant waited until the very day of trial to again request a continuance so that additional counsel could investigate the case *de novo*. He did not seek to discharge his initially retained attorney, who had been active in preparation for trial, but requested only to engage a co-counsel. Mr. Pincham was present in court and leave was granted for him to file an appearance; but when the court denied the motion for a three week continuance Mr. Pincham refused to enter the case. Under all the facts and circumstances, we do not believe that the trial court abused its discretion in denying the requested continuance.

In *People v. Payne*, 46 Ill.2d 585, 264 N.E.2d 167; *People v. Green*, 42 Ill.2d 555, 248 N.E.2d 116; and *People v. Ritchie*, 66 Ill.App.2d 417, 213 N.E.2d 306, cited and relied upon by the defense, the defendants had retained or desired to retain private counsel, but were forced to stand trial with the assistance of an appointed counsel who was relatively unfamiliar with the facts of the case or without the assistance of counsel. It is urged that "The only difference between the *Payne* and *Green* cases and the instant one, is that Gore had one privately retained counsel and did not have a Public Defender appointed to represent him." This assertion is not accurate because in both *Payne* and *Green*, counsel was appointed on the day of trial whereas here the privately retained lawyer actively entered the case over two months prior to trial. The distinction between appointed and privately retained counsel, though, is recognized and meaningful. The defendant who employs his own attorney exercises a choice and has control which is unavailable to persons with appointed counsel. As the Supreme Court points out in *People v. Kenzik*, where a murder conviction is reversed for failure to grant a continuance requested by appointed counsel, (9 Ill.2d 204, at 212, 137 N.E.2d 270, at 275), "There is a general tendency by the courts to exercise a greater leniency and a wider discretion where it is necessary to protect the rights of indigent persons accused of crime through appointment of counsel not of their own choosing." In the case at bar, in contrast to the cases cited by the defense, the defendant was represented at trial by privately retained counsel who had been involved in the case for two and one-half months.

■■ The defendant's final contention is that he was not proven guilty beyond a reasonable doubt. The facts indicate that early in the morning of October 25, 1969, two persons were killed and another was severely injured after a confrontation involving a number of youths outside of the Tea Box Lounge which is located at the intersection of Trumbull and Ogden Avenues on the west side of the City of Chicago. The defendant was charged with the murder of Thurman Williams and aggravated

battery upon Earl Hollins. Earl Hollins testified that at about 1:30 A.M. on the morning in question, he was stopped as he was returning home, by the defendant who was carrying a gun. When the defendant struck him lightly on the face he turned away, and "that is when he [the defendant] let me have it, hit me on the right side of the face and breaks my jaw." Hollins then stated, "Well, Bobby, he walks back down toward Trumbull where the Tea Box is and just as I am getting up off the ground he walks up to Scab [Thurman Williams] and slaps Scab and steps back and shoots him, you know." Thomas Barber who was employed at the Tea Box Lounge and who was inside the establishment at the time of the shooting, testified that he saw the defendant walk up and slap Williams and "Then I seen him when he shot him in the side." Clarence Conn who was standing next to the defendant at the time of the incident, testified that the defendant with a gun in his right hand shot Williams. The defendant denied that he killed Williams and demonstrated that he was left handed.

It is contended that "The testimony of the prosecution witnesses is so internally inconsistent, so frequently contradicted by prior statements of its witnesses, and so much at odds with physical facts as to leave a very substantial doubt as to guilt."

■■■ We are of the opinion that there was sufficient evidence to find the defendant guilty beyond a reasonable doubt. We have considered the defendant's argument that the prosecution's witnesses contradicted prior statements and conflicted with respect to some of the physical facts. It is axiomatic that such examples weaken the testimony of these witnesses. Mere discrepancies in testimony taken at two different times, however, is not unusual. (*People v. Clay*, 27 Ill.2d 27, 187 N.E.2d 719.) The witnesses were extensively cross-examined and explained their reasons for the differences in their testimony. The arguments presented here were clearly made to the jury and rejected. Under all the facts and circumstances shown by this record the discrepancies and changes in statements did not destroy the credibility of the three eye witnesses, but only went to the weight to be given their testimony. After a careful review of the record, we have concluded that the proof of defendant's guilt was not so unsatisfactory as to justify a reasonable doubt. *People v. Nicholls*, 44 Ill.2d 533, 256 N.E.2d 818.

For the reasons stated, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.