1094

Rose Calcese, Special Adm'r of the Estate of Charles Calcese, Deceased, Plaintiff-Appellant, *v.* Cunningham Cartage, Inc., *et al.*, Defendants-Appellees.

(No. 73-170; )

Second District (1st Division)—January 29, 1975.

Edwin A. Strugala and Marshall I. Teichner, both of Chicago, for appellant.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan (Alfred W. Lewis, of counsel), for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Charles Calcese sued the defendants Cunningham Cartage Inc., a corporation, and Robert M. Cunningham, its driver, to recover damages for personal injuries suffered in a motor-vehicle collision. The defendants were found not guilty of negligence in a jury trial. The jury also found, in response to a special interrogatory, that the plaintiff was free of contributory negligence. Subsequently Charles Calcese died, and this appeal has been filed by his wife, acting as special administrator of his estate.

The plaintiff contends that a verdict should have been directed in favor of the plaintiff or that a judgment *n.o.v.* should be entered because the general verdict of the jury cannot stand as a matter of law based on the evidence. Alternatively, the plaintiff argues that the general verdict is inconsistent with the jury's finding that the plaintiff was not guilty of contributory negligence. He also claims that various trial errors mandate a new trial.

The accident occurred at the intersection of State Route 120 and Fairfield Road in Lake County, Illinois, at approximately 5:30 A.M. on April 16, 1969. Charles Calcese was driving his automobile south on Fairfield Road on his way to his employment. The defendant, Robert M. Cunningham, as an employee of the defendant corporation was driving east on Route 120 in a tractor-trailer truck with a load of gravel. State Route 120 is a preferential highway, and there is a stop sign for traffic on Fairfield Road at the intersection. At the time of the accident there was what was generally characterized in the record as a "dense fog." It was also "drizzling" and "dark."

The defendant, Robert M. Cunningham, testifying under adverse examination, said that on the morning of the accident he had picked up his load at the McHenry Sand and Gravel Pit located approximately 5 miles west of the intersection in question and was headed for the atomic-energy plant in Zion, Illinois. His truck was a tractor-trailer unit weighing 70,000 pounds loaded. It was equipped with a total of 16 forward shifts. He said that he drove his vehicle in the sixth gear which at its highest speed would probably go 37 to 38 miles per hour. The highest speed he attained in the 5 miles between the gravel pit and the intersection was 35 miles per hour, and he stated that just prior to the col-

lision he was going between 30-32 miles per hour. His driving lights were on low beam. He had amber fog lights and five lights across the top of the cab, together with numerous lights on both sides of the trailer towards the front and rear.

He said that he sounded his horn, which could be heard for more than 200 feet, when he was approximately 150 feet from the intersection. At that time he said he could see a street light on one corner of the intersection and some house lights in the trailer court area located there.

He testified that the front of his tractor was in approximately the center of the intersection when he first saw the plaintiff's vehicle, which was only a foot or two away, alongside him.

A court reporter, who took Cunningham's statement on the day following the accident, stated that Cunningham said he was going about 40 miles per hour at the time of the occurrence, and that as he approached the intersection he could see only a car length or two because of the density of the fog. When questioned about this statement, Cunningham said he did not recall making the statement as to the 40-mile-per-hour speed. As to the visibility, he explained that there were previous areas where he could see only two car lengths, but as he approached the intersection he could see the 150 feet.

Charles Calcese testified that he lived on Fairfield Road approximately 2 miles north of the intersection and that he started to work about 5:30 A.M. on the day of the accident, driving south on Fairfield Road to the intersection where he intended to cross Route 120 and continue south. He said he tested his lights, horn and brakes that morning before leaving his house. He stated that, because of the fog, in some places heading south he could hardly see in front of his car, and in other spots the visibility was not over 50 feet. He had on his head lights and windshield wipers.

He came to a complete stop at the white line located some 5 or 6 feet south of the stop sign on Fairfield Road, lit a cigarette at that point, looked to his left, then to his right and observed no traffic approaching from either direction. He then proceeded into the intersection. He had traveled approximately 5 or 6 feet into the intersection when he saw the flickering lights of what seemed to be a trailer to his right and in 1 to 3 seconds the collision occurred. He was not positive whether the front of his car had reached the center line of Route 120 at the time of the collision. He did not hear a horn.

He said he told the officer who interviewed him in the hospital that he had hit or attempted to hit his brakes and all he could see or feel was gravel. The officer testified that Calcese told him that upon approaching the intersection he applied his brakes and failed to stop because of sand

or gravel. The officer also testified that he found no signs of skid marks of either vehicle prior to the point of impact.

■■ Based on the facts in the record and the inferences from the facts which the jury could draw, we conclude that the verdict was not against the manifest weight of the evidence. The visibility at the particular time and place was a matter for the jury to decide under the conflicting evidence and the inferences which could be drawn from it. The plaintiff's argument that it is unlikely that the accident could have happened if the defendant's testimony is to be believed is speculative and a theory which was fully argued to the jury. There was, on the whole record, evidence which the jury could find credible that the defendant who was on a preferential highway was not proceeding at an excessive rate of speed, that his truck was properly lighted and that he attempted to warn of his approach by sounding his air horn. The finding that he was not negligent under these circumstances is not against the manifest weight of the evidence. See *Ruggiero v. Public Taxi Service, Inc.* (1973), 16 Ill.App.3d 754, 760; *Legerski v. Nolan* (1971), 132 Ill.App.2d 51, 54.

■■ This conclusion also stands as an answer to the plaintiff's argument that it was error not to enter a judgment *n.o.v.* which requires even more conclusive evidence than that necessary to justify a new trial. See *Pedrick v. Peoria & Eastern R. R. Co.* (1967), 37 Ill.2d 494, 509-510.

■■ The plaintiff next contends that the answer to a special interrogatory in which Charles Calcese was found not guilty of contributory negligence is inconsistent with, and controls, the general verdict which found the defendant not guilty of negligence. (See *Freeman v. Chicago Transit Authority* (1965), 33 Ill.2d 103, 106.) We do not, however, find them inconsistent in this case. To establish a case of negligence it is incumbent upon a plaintiff to not only prove freedom from contributory negligence but also to prove that the defendant driver was negligent and that his negligence proximately caused the collision and resulting injuries. Here, the jury could have found from the evidence that plaintiff was free from contributory negligence, believing that he stopped and proceeded across the intersection using reasonable care, but that defendant had also proceeded on the preferential highway using reasonable care under the circumstances. The jury could have reasonably concluded that due to the foggy conditions both drivers were prevented from seeing the other in time to avoid the accident, and thus that neither driver was chargeable with negligence. See *Legerski v. Nolan*, 132 Ill. App.2d 51, 54-55.

*Dursch v. Fair* (1965), 61 Ill.App.2d 273, *Stone v. Warehouse & Terminal Cartage Co.* (1955), 6 Ill.App.2d 229, and *Cornwell v. Bloomington Business Men's Ass'n*, (1911), 163 Ill.App. 461, are cited by the

plaintiff as authority for the claim that the jury could not find that the accident was unavoidable on the facts before them. We do not find the cases persuasive. In *Dursch*, the defendant drove his car into the rear of a truck. There was substantial evidence that he was asleep at the time, and there was no evidence introduced concerning weather conditions which could affect visibility. In *Stone*, there was a conflict as to respective distances and speeds of two vehicles which collided at an unregulated intersection. The court found that there was no evidence to indicate that the occurrence was without fault of either party on the facts, which did not include any problems of visibility. In *Cornwell*, the defendants offered no evidence to show that the accident was caused other than by their negligence as disclosed by the plaintiff's evidence. The court ruled that it was not error for the trial judge to refuse to give an instruction that the injury was caused by a mere accident without fault or neglect on the part of the defendants. Here, by contrast, although there was evidence from which the jury could find that the plaintiff was not guilty of negligence, there was also evidence which justified a finding that defendant was not negligent.

■■ The plaintiff claims that he was substantially prejudiced by the conduct of the defendant's counsel in reading from a police report which was not in evidence in his closing argument. While the plaintiff contends that this was repeated after objection and admonishment by the court, the certified record before us, which imports verity (see *Kazubowski v. Kazubowski* (1970), 45 Ill.2d 405, 416; *People v. Spence* (1971), 133 Ill.App.2d 171, 172), reveals only the following:

> "* * * Mr. Calcese was testifying, he talked to a deputy and he said, I told the deputy that I applied my brakes but all I saw was gravel.
>
> That's sort of a vague statement to make here. The implication was, crawling out, or what, I don't know, but I know that investigating police officers prepared this report like an hour or two after the accident, after he could immediately talk to these people and he doesn't have anything to do with this case, except for, through his job as an investigating officer. And he has stated that Mr. Calcese told him he was traveling south on Fort Hill Road and upon approaching the stop sign —
>
> MR. STRUGALA: I beg your pardon. Objection. What is he reading from?
>
> THE COURT: It should be from the evidence.
>
> MR. STRUGALA: I would like to be heard on a motion right now, if the Court please.
>
> THE COURT: I would ask the jurt [*sic*] to consider the evi-

dence they hear in this case, and you heard the evidence from the witness stand. I would just as soon limit the argument."

It is, of course, improper to refer to a police report which is not in evidence. (See *Anderson v. Universal Delta* (1967), 90 Ill.App.2d 105, 111-112.) In this case, the trial judge did not err in ruling in his discretion that the error was not prejudicial. The objection was quickly sustained before the jury was informed of substantial details of the report, and the partial reference which was heard by the jury concerned matters to which the police officer previously testified on the stand and which only affected the issue of plaintiff's contributory negligence. The fact that the jury found the plaintiff not guilty of contributory negligence indicates that the improper reference to a police report not in evidence did not prejudice the plaintiff. See *Redding v. Schroeder* (1964), 54 Ill. App.2d 306, 314-315.

The plaintiff further contends that the court erred in refusing his offer of proof, which he claims would have impeached the defendant's testimony that he was traveling only at 30-32 miles per hour at the time of the accident, and his testimony as to the highest speed which his truck could reach. The tendered proof was to the effect that the maximum number of daily trips the defendant ever made between the pit where he picked up his load of gravel and the 30 miles to his destination in Zion was six, and that his truck could travel at 55-60 miles per hour on a downgrade. We conclude that the trial court properly refused the tender of proof because it was both irrelevant and nonimpeaching.

Relevancy is established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable in the light of logic, experience and accepted assumptions of human behavior. (*Marut v. Costello* (1966), 34 Ill.2d 125, 128.) There was nothing in the testimony to establish how many trips the defendant would have made that particular day, and moreover, there is no substantial relationship between an average speed and the rate of speed the defendant would be traveling at any one moment. Similarly, the offer to prove the speed at which the truck was capable of traveling did not impeach the defendant's testimony on a material matter. He had testified that the truck could travel at 52 miles per hour and reach at least 55 miles per hour on downgrades.

For the reasons stated, we affirm the judgment below.

Affirmed.

GUILD and HALLETT, JJ., concur.