THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERALD W. GARDNER, Defendant-Appellant.

Fifth District   No. 76-100

Opinion filed April 4, 1977.

530

James Geis and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Robert Howerton, State's Attorney, of Marion (Bruce D. Irish and James R. Sanders, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

Following a jury trial the defendant, Gerald Gardner, was found guilty of burglary, and was sentenced to a term of imprisonment for not less than six years and eight months nor more than 20 years.

The defendant was charged by indictment with the burglary of the Heights Food Shop in Herrin, Illinois. The owners, husband and wife, of the burglarized store testified that they locked the store on the evening in question about 6 p.m. At about 3:30 a.m. the next morning a Herrin police officer awakened the husband and accompanied him to the store. The back door of the store was open; there were potatoes on the floor and everything from the meat containers had been taken out and piled on the floor. The store's stock of cigarettes had been placed in boxes and the glass on the front door had been broken.

Herrin Police Officers Jack Engram and Rick Lynn stated that while on routine patrol at 2 a.m. on the night in question, they noticed the broken glass on the front window of the store, and they also saw two individuals inside the store. Both officers testified they witnessed the two men exit the store by the back porch. They also stated that one of the men leaving the store had one leg and was on crutches. Officer Engram testified that he saw the man on crutches when he came out of the store and also when the two men stopped by a fence. There was a four-foot-high chain link fence at the rear of the yard behind the store. When the individual on crutches ran away from the fence he was apprehended by Officer Lynn, and Lynn identified him in court as the man he saw running from the store and apprehended.

The defendant testified that he was at a party when he started home about 2 a.m. on the night in question with Bob Phelps. Because of the difficulty in starting the car, Phelps had to repair the car twice. After the car stalled the last time, defendant was going towards a house with some lights on to call his mother, when he saw the police car with flashing lights. Due to his past criminal record, defendant stated that he panicked and ran. He denied being in the burglarized store. Phelps testified that he had to repair defendant's car twice early in the morning and defendant finally drove off alone.

After the jury returned a verdict of guilty, a sentencing hearing was conducted and the defendant was sentenced to six years and eight months to 20 years imprisonment.

The issues presented on appeal are: (1) that a serious conflict of interest between the defendant and appointed counsel against whom the

defendant had filed a complaint with the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois requires reversal of the defendant's conviction; (2) the trial court erred by limiting direct examination as to the defendant's physical condition, yet allowed the State to introduce evidence of the same; and (3) the imposition of the maximum sentence is excessive in light of the nature of the offense.

For reasons detailed below, we find none of these arguments persuasive and affirm the judgment of the lower court.

At the preliminary examination on March 11, 1975, the court found the defendant indigent and appointed the public defender, Mr. Hubler, and his assistant, Mr. Gamber, to represent him. Mr. Hubler represented the defendant during the preliminary hearing on March 14, 1975, while Mr. Gamber on May 7, 1975, was present during arraignment. The case was set for jury trial in July, reset for September, and a continuance was then granted when requested by a private attorney representing the defendant. Subsequent to the private attorney's withdrawal, the cause was reset for trial in October and Mr. Hubler was reappointed. In late October the case was reset for trial on November 12, 1975. On that date, the defendant requested an attorney other than Mr. Hubler because Mr. Hubler had failed to make a court appearance on behalf of the defendant in a dramshop case which resulted in the case's dismissal with 30 days to reinstate. For this reason, the defendant's mother filed the complaint with the Attorney Registration and Disciplinary Commission.

Mr. Hubler, noting the personal conflict existing because of this incident between himself and the defendant, asked that he "be let out of this damn case" so as not to be made the "No. 1 whipping boy" if the case was appealed. The State objected to the defendant obtaining other counsel pointing out that there already had been four continuances and there might be "a 120-day rule problem." Giving the defendant two alternatives, the court allowed the defendant to choose between going to trial immediately with Mr. Hubler or going to trial with Mr. Hubler's assistant, Mr. Gamber, the next day. The defendant indicated his willingness to accept Mr. Gamber providing that Mr. Gamber institute his own investigation and that the court grant more than a one-day continuance. Since the judge was unwilling to grant a continuance any longer than one day, the defendant stated "he would go to trial with Mr. Hubler and appeal."

■■ The right to counsel guaranteed by both Federal and State constitutions includes the right to be represented by counsel of one's choice or if indigent, to have counsel appointed by the court. (U.S. Const., amends. 6, 14; Ill. Const., art. I, § 8; Ill. Rev. Stat. 1975, ch. 38, par. 113—3.) The accused has the right to discharge his attorney or to substitute attorneys at any time, providing, however, that the right is not

exercised arbitrarily to thwart the prompt administration of justice. (*People v. Gore*, 6 Ill. App. 3d 51, 57, 284 N.E.2d 333 (1972), *cert. denied*, 411 U.S. 907, 36 L. Ed. 2d 196, 93 S. Ct. 1534, (1973).) Courts have qualified this right when dealing with court-appointed counsel for indigents. (See Annot., 66 A.L.R.3d 966 (1975).) It is often said that the indigent defendant does not have the right to choose his court-appointed counsel. *People v. Blakely*, 7 Ill. App. 3d 1012, 298 N.E.2d 269; *People v. Moore*, 5 Ill. App. 3d 125, 283 N.E.2d 264.

Illinois has adopted a *per se* reversal rule, without regard to prejudice, whenever a sufficiently serious conflict of interest on the part of the defendant's counsel is demonstrated. (*People v. Hendricks*, 41 Ill. App. 3d 178, 353 N.E.2d 177; *People v. Cross*, 30 Ill. App. 3d 199, 331 N.E.2d 643.) In order to engage the *per se* rule the defendant must establish that a conflict existed at trial. *People v. Barren*, 32 Ill. App. 3d 78, 81, 335 N.E.2d 779.

■■ In the case at bar, the defendant and his counsel explained in detail the basis for their personal differences and conflicts before trial in the judge's chambers. This court need not speculate as to the nature and degree of conflict which existed for it is revealed in the record. The defendant argues that an "obvious conflict of interest between the defendant and appointed counsel" requires application of the *per se* rule as promulgated by *People v. Stoval*, 40 Ill. 2d 109, 239 N.E.2d 441. The progeny of *Stoval*, however, have interpreted the *per se* rule to apply only "where counsel's conflict of interest arises from a commitment to others," and has not applied or adopted the rule where a conflict arises in another fashion. (*People v. Fuller*, 21 Ill. App. 3d 437, 442, 315 N.E.2d 687.) The *per se* reversal rule does not apply to the case at bar because the alleged conflict does not arise from or involve a commitment to others. Even though the *per se* rule is inapplicable, this does not end our examination into the possible subliminal affects such a conflict might have on the defendant's right to be zealously represented by counsel of undivided loyalty. (*People v. Kester*, 33 Ill. App. 3d 262, 337 N.E.2d 44.) When dealing with the rights of indigent defendants who are furnished counsel not of their own choosing, the courts have faithfully exercised a greater leniency and a wider discretion when necessary to protect those rights. (*People v. Kenzik*, 9 Ill. 2d,204, 212, 137 N.E.2d 270.) The courts of review carefully survey the trial court record, watchful for conflicts which might prevent counsel from fully devoting his energies to his client.

The defendant contends that the disposition of his case is controlled by *People v. Brown*, 40 Ill. App. 3d 562, 352 N.E.2d 15. In *Brown*, after the defendant's conviction, but prior to his sentencing, the defendant submitted a letter to the court accusing his attorney of subornation of perjury. The court launched a formal investigation of the charge, the

results of which were unknown at the time of sentencing when the defendant was again represented by the same attorney. Upon review, the court found the conflict placed counsel in an awkward and duplicitous position. This finding required reversal since the defendant did not adequately waive this issue and agree to the continued representation by the attorney.

■■ Although the case at bar appears seductively similar to *Brown*, we believe it is distinguishable. In *Brown*, the attorney was accused of committing a criminal offense and a serious breach of professional responsibility which resulted in the court requesting the State's Attorney to investigate the matter. In the case at hand, no criminal charge had been levied against Mr. Hubler. Furthermore, the complaint sent to the Attorney Registration and Disciplinary Commission concerning Mr. Hubler's failure to appear involved an unrelated civil case; whereas in *Brown*, the charges dealt directly with the ongoing criminal case of the defendant. The conflicting positions between the defendant and his attorney in *Brown* were further illustrated and defined by defendant's counsel denying the accusation of subornation of perjury. However, in the instant case, trial counsel does not deny that he failed to appear in the civil case. Although seemingly a minor point, this difference further demonstrates the lack of inherent conflict between the parties involved. In the instant case, no probing investigation need be launched to determine which party is or is not telling the truth as was necessary in *Brown*.

Just as important as the distinctions between *Brown* and the case at hand is an underlying policy notion. Should the courts develop a rule requiring reversal upon a showing of personal conflict and animosity arising from an incident between a defendant and his counsel which results in a complaint being filed with the appropriate authorities? The rule would become a spawning ground for frivolous appeals and supply a reason for defendants not to fully cooperate with court-appointed counsel. Whenever a difference of opinion regarding possible trial tactics or defenses might arise between a defendant and his attorney, such a rule would promote noncooperation and disputes over the smallest differences of opinion. Furthermore, such a rule would instigate the filing of groundless complaints with the Attorney Registration and Disciplinary Commission whenever a defendant became dissatisfied with the performance of his attorney in order to assure a reliable mode of reversal should conviction result from the trial.

We refuse to create the rule which the defendant advocates. Instead, this element of the defendant's appeal is controlled by the Illinois Public Defender Act (Ill. Rev. Stat. 1975, ch. 34, par. 5604), which reads in part:

"Any court may, with the consent of the defendant and for good

cause shown, appoint counsel other than the public defender, and shall so appoint if the defendant or accused shall demand and show good cause for the appointment, except as otherwise provided in Section 113—3 of the 'Code of Criminal Procedure of 1963'."

Under this statute, the selection of appointed counsel is not unqualifiedly vested in the defendant. (*People v. Gray*, 33 Ill. 2d 349 (1965), *cert. denied*, 384 U.S. 718, 16 L. Ed. 2d 881, 86 S. Ct. 1899, (1966).) Instead, the statute entitles an indigent defendant to counsel other than the public defender only after a showing of good cause. (*People v. Drew*, 36 Ill. App. 3d 807, 345 N.E.2d 45. Absent a showing of good cause, it is within the discretion of the trial court to deny a request for substitute counsel. *People v. Johnson*, 24 Ill. App. 3d 152, 320 N.E.2d 69.

■■ In the present case the defendant has failed to demonstrate good cause. The public defender competently represented the defendant since arraignment, except for the interruption caused by private counsel entering and withdrawing from the case, and engaged in pretrial motions. Never challenging the public defender's competence, the defendant sought to display that the public defender was prejudiced against him. Even though trial counsel articulated the difficulty he would have in adequately representing the defendant because of the personal conflict, it is within the judge's discretion whether or not to appoint another attorney. *People v. Bunting*, 18 Ill. App. 3d 99, 309 N.E.2d 316 (1974). In *People v. Gray*, 33 Ill. 2d 349, 211 N.E.2d 369 (1965), *cert. denied*, 384 U.S. 718, 16 L. Ed. 2d 881, 86 S. Ct. 1899 (1966), the court cited with approval language from the opinion of *United States ex rel. Mitchell v. Thompson*, 56 F. Supp. 683, 688 (S.D.N.Y. 1944):

" 'I have always believed the law to be that the choice of counsel of indigent persons accused of a crime was the court's and not the defendant's. * * *

* * *[S]uch a choice should not be subject to impeachment on the ground of a claimed displeasure with the appointment or the lack of confidence in the attorney unless there is good cause why the appointment should not have been made. * * *' " 33 Ill. 2d 349, 354, 211 N.E.2d 369, 372.

In our judgment, the defendant never demonstrated good cause. The conflict existing between the defendant and his counsel was of a personal nature in which the defendant lacked confidence in the ability of trial counsel to zealously represent him. Because of this disposition, it is unnecessary to explore the strong possibility that the defendant voluntarily waived the issues thus far discussed by requesting to go to trial with the public defender.

■■ Regarding the second issue, counsel for the defendant argues that

the trial court improperly sustained the State's objection to the following exchange:

"Q. Now, were you afflicted with any other kind of an impairment other than the one you have told the jury about at that time?

A. No, there was nothing wrong except the operation I have over the shooting.

Q. Now, those operations—were they restrictive in your walking?

A. Well, not only to my walking, but my physical health period. I wasn't able to do any physical labor whatsoever. Because of my heart condition.

Mr. Howerton: Objection, your Honor. The answer he is attempting to give is not responsive to the question. And it most certainly is self-serving.

The Court: The objection is sustained. Confine your answers to the questions."

The question propounded to the defendant was proper, and while the answer was not entirely responsive, the party who is not conducting the examination of the witness may not complain that an answer is not responsive to the question propounded unless the answer volunteers testimony that is incompetent or otherwise inadmissible. (*Hester v. Goldsbury*, 64 Ill. App. 2d 66, 212 N.E.2d 316; III Wigmore on *Evidence* § 785, at 200 (3d ed. 1940).) We can hardly see how the defendant was prejudiced, however, as no motion to strike the proffered testimony was made. The defendant was allowed to develop fully that his physical condition impaired his ability to walk, a fact that must have been apparent to the jury.

Next, we consider the defendant's argument that the trial court improperly and prejudicially limited the scope of direct examination concerning the defendant's physical condition, yet permitted the State to introduce evidence to rebut the defendant's physical capabilities. The record does not support this contention. The defendant's principal complaint is that the defense counsel was not allowed to elicit the defendant's testimony regarding his physical condition after he was arrested. Once taken to the city jail, the defendant collapsed or passed out and was taken to the hospital, whereupon he awoke with a cut on his head. The defense counsel, detailing this information to the trial court in an offer of proof, attempted to connect the defendant's physical condition subsequent to arrest with his physical ability (or inability) to commit the offense. Since the defendant had only one leg, needed crutches to walk, and had a heart condition, the defense counsel argued that it was physically impossible for the defendant to have committed the offense.

The trial court having previously sustained an objection concerning occurrences subsequent to the defendant's arrest, indicated that evidence of the defendant's physical condition after the arrest was irrelevant and that testimony should reflect the defendant's condition existing prior to arrest.

With respect to the trial court's ruling, relevancy is established where the fact offered tends to prove a disputed fact or render the matter in issue more or less probable in light of logic, experience, and accepted assumptions of human behavior. (*Calcese v. Cunningham Cartage, Inc.*, 25 Ill. App. 3d 1094, 1099, 322 N.E.2d 620.) The relevancy of a fact in controversy or a matter in issue as evidence of a possible defense is a matter for the sound discretion of the court. (*People v. Radford*, 87 Ill. App. 2d 308, 312, 232 N.E.2d 100.) If the record indicates a sufficient basis for the trial court's decision and there is no abuse of discretion to the prejudice of the defendant, this court will not disturb the lower court's ruling on appeal. *People v. Therriault*, 42 Ill. App. 3d 876, 356 N.E.2d 999; *People v. Skidmore*, 69 Ill. App. 2d 483, 217 N.E.2d 431.

As for issues of relevancy and materiality, the trial court has a "wide scope for decision"[1] and may reject evidence which it determines to be of little probative value because of its remoteness, uncertainty, or conjectural nature. (*Trippel v. Lott*, 19 Ill. App. 3d 936, 944, 312 N.E.2d 369; *Hagerman v. National Food Stores, Inc.*, 5 Ill. App. 3d 439, 441, 283 N.E.2d 321.) Although every appellate court might not agree with the trial judge's determination of relevancy, reversal will occur only when abuse of discretion results in prejudice to the defendant. (*People v. Therriault*, 42 Ill. App. 3d 876, 356 N.E.2d 999.) The rationale for this judicial deference is based upon the appellate court's recognition of the trial judge's superior position to balance the factors necessary for a just result, and the appellate court's difficulty in determining if a better overall result would have occurred from a contrary ruling. Even with this latitude given to the trial judge's determination, the record must nonetheless sufficiently reflect those factors which caused the ruling so that upon review the appellate court can discern whether or not there was an abuse of discretion resulting in prejudice to the defendant. *People v. Therriault*, *supra*, 42 Ill. App. 3d 876, 889, 356 N.E.2d 999, 1008.

■■ Applying these principles to the instant case, the trial judge enunciated the reasons why he would not allow the defense counsel to question the defendant about his physical condition after arrest. Although the standard for determining the relevancy of evidence is such that most evidence will be admissible if it renders a matter in issue more or less probable, we find that testimony detailing the defendant's physical state after his arrest would shed little or no light on the defendant's physical

---

[1] Rosenberg, "Judicial Discretion" 38 The Ohio Bar 819, 823 (1965).

inability to commit the offense. In so limiting the scope of direct examination, we believe the trial court judge was properly exercising his sound discretion.

As a buttress to the foregoing argument, the defendant contends that error was committed by allowing the State to introduce rebuttal evidence as to the defendant's physical capabilities subsequent to his arrest, while the defendant was prohibited to do the same. Rebutting evidence is that which is adduced by the prosecution to explain, repel, contradict, or disprove evidence given by the defendant. (*People v. Carbona*, 27 Ill. App. 3d 988, 1005, 327 N.E.2d 546, *cert. denied*, 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114; *People v. Green*, 26 Ill. App. 3d 662, 325 N.E.2d 316, *aff'd in pt. & rev'd in pt.*, 62 Ill. 2d 146, 340 N.E.2d 9.) A rebuttal witness may be called to contradict the defendant's testimony as to a material issue, but not as to a collateral or unmaterial matter. *People v. McGhee*, 20 Ill. App. 3d 915, 922, 314 N.E.2d 313.

■■ The rebuttal testimony of Officer Engram dealt with the defendant's physical ability to move without the aid of crutches. The defendant had stated earlier on direct and cross-examination that the loss of his leg forced the use of two crutches just to be able to walk. Even though Engram's testimony arose from observing the defendant hop across a room and into a hallway after the defendant's arrest, this does not render the testimony either collateral or immaterial. Such testimony directly contradicts the defendant's earlier statement and was patently relevant to the question of the defendant's *believability* and *veracity*.

■■■ Conceding that the officer's testimony was proper, counsel for the defendant argues that it would be anomalous for the court to allow the officer's testimony yet prohibit the defendant's testimony regarding the events subsequent to his arrest. The distinction, however, lies between establishing the defendant's defense (his physical inability to commit the offense) and the State's impeachment, rebuttal, or contradiction of the evidence introduced by the defendant. In the former, the defendant was properly limited to relevant testimony regarding his physical condition *prior* to his arrest because evidence of his condition *after* arrest would have little or no relevancy to his defense theory. In the latter, evidence is properly admissible within the discretion of the trial court if it rebuts the defendant's evidence as to a material issue. (*People v. Higgins*, 27 Ill. App. 3d 266, 269, 327 N.E.2d 135 (1975); *People v. McGhee*, 20 Ill. App. 3d 915, 922, 314 N.E.2d 313 (1974).) Where evidence has been given by the defendant to support a defense, "the People are entitled to offer any evidence which tends to contradict or disprove the same * * *." (*People v. Thomas*, 7 Ill. 2d 278, 281, 131 N.E.2d 35 (1955).) Officer Engram's testimony directly refuted the defendant's testimony that he had to use

both crutches to be able to walk. It was, therefore, properly admitted in rebuttal in the discretion of the trial court.

■■ The defendant contends, as his final argument on appeal, that the imposition of the maximum sentence—6 2/3 to 20 years—for burglary is excessive in light of the nature of the offense. The record shows that the trial court at the sentencing hearing carefully considered both the nature of the offense and the defendant's character before imposing sentence. Furthermore, the court considered testimony from the defendant's wife and mother as to his religious conversion and studied letters submitted by other members of the defendant's family. Upon weighing all of these factors as well as the defendant's lengthy criminal record—four felony and two misdemeanor convictions—and a history of violence culminating with the incident in which the defendant lost his leg as the result of a barroom shooting, the trial court judge sentenced the defendant for a period of not less than six years and eight months to 20 years.

This court has the power to reduce the punishment imposed by the trial court. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4).) This authority must be exercised with considerable caution and circumspection. (*People v. Jones*, 30 Ill. App. 3d 1065, 333 N.E.2d 245 (1975).) The imposition of a sentence is largely a matter of judicial discretion. (*People v. Seger*, 39 Ill. App. 3d 654, 350 N.E.2d 481 (1976).) Since the trial court is in a better position to determine the appropriate sentence, the sentence will not be modified upon review unless the trial court abused its discretion. *People v. Vaini*, 33 Ill. App. 3d 246, 337 N.E.2d 234 (1975); *People v. Taylor*, 33 Ill. 2d 417, 211 N.E.2d 673 (1965).) The type of abuse necessary for a reduction of the sentence has been characterized as the imposition of a penalty which " 'constitutes a great departure from the fundamental law and its spirit or purpose, or * * * is manifestly in excess' of constitutional proscription." *People v. Witherspoon*, 33 Ill. App. 3d 12, 23, 337 N.E.2d 454 (1975).

In the instant case, we believe the trial court after considering matters in aggravation and mitigation did not abuse its discretion in sentencing the defendant. It is apparent that the defendant's newly found religious beliefs and community ties have not deterred his life of crime or made him a responsible family man.

Accordingly, the judgment of the Circuit Court of Williamson County is affirmed.

KARNS and JONES, JJ., concur.